## THE PEOPLE *vs.* ALVAH REED.

It is not a valid objection to an indictment that it recites the wrong year in which the statute, under which the defendant was indicted, was passed by the legislature.

An indictment alleged, or recited, that the act was passed April 12, 1861. It was in fact passed on that day and year, but was repealed the next year. It was re-enacted May 5, 1863, by a provision declaring that "all the provisions" of that chapter "are hereby re-enacted and declared to be in full force from and after the passage of this act." The statute thus re-enacted was chapter 173 of the Laws of 1861, containing six sections. The offense was committed after the re-enactment in 1863, and while the act was in force. *Held* that this was not a variance fatal to the indictment.

A material variance, in such a case, is where some material provision of the statute is misrecited.

It is wholly immaterial when the statute was enacted by the legislature, and became a law, provided it was in force when the offense charged in the indictment was committed.

The legislature has power to pass a valid law to prevent the taking of fish, at certain seasons, within the waters of this state. It is a power which the legislature has always exercised, and the right is founded in considerations of public policy.

Where an offense consists in doing acts prohibited by a statute, it is unnecessary for the jury to find that the defendant was actuated by express malice. It is enough for them to find that he was guilty of the act.

WRIT of error to the court of sessions, of Ontario county. The defendant was indicted at the oyer and terminer, in May, 1865, for taking fish with a seine, from Canandaigua Lake. The indictment alleged "that Alvah Reed, late of the town of Canandaigua, in the county aforesaid, on the thirteenth day of May, in the year of our Lord one thousand eight hundred and sixty-five, with force and arms, at the town of

Canandaigua, in the county aforesaid, did unlawfully and willfully and maliciously take, catch and procure, in and from that part of Canandaigua Lake lying within the county of Ontario, a number of fish, to wit, the number of thirty, by means of a seine, contrary to the provisions of sections 1 and 3 of an act passed April 12th, in the year one thousand eight hundred and sixty-one, by the legislature of the state of New York, entitled 'An act for the preservation of fish in Canandaigua Lake and inlet thereof, lying within the counties of Ontario and Yates,' and against the peace of the people of the state of New York, and their dignity." And "that the said Alvah Reed, on the thirteenth day of May, in the year one thousand eight hundred and sixty-five, at the town of Canandaigua aforesaid, in the county of Ontario aforesaid, did wrongfully, willfully and maliciously take, catch and procure, from that part of Canandaigua Lake lying within the county of Ontario, a number of fish, to wit, the number of thirty, by means of a net, contrary to the provisions of sections 1 and 3 of an act passed April 12th, in the year one thousand eight hundred and sixty-one, entitled 'An act for the preservation of fish in Canandaigua Lake and the inlet thereof, lying within the counties of Ontario and Yates,' and against the peace of the people," &c.

The defendant pleaded not guilty. On the trial at the Ontario sessions, after the counsel for the people had rested, the counsel for the defendant moved that the defendant be discharged, and insisted that the legislature had no authority, under the constitution, to pass a law prohibiting fishing in any particular manner in any of the public waters of this state, and that therefore the indictment could not be maintained. His honor, the county judge, declined so to hold, and the defendant's counsel excepted. The counsel for the defendant then moved that the defendant be discharged, and insisted that the indictment could not be maintained because it only referred to sections 1 and 3 of the act of 1861, without any general or other reference to the statue; that

The People *v.* Reed.

not being a sufficient reference to the statute. His honor, the county judge, declined so to hold, and the defendant's counsel excepted. The counsel for the defendant then moved that the defendant be discharged, and insisted that the indictment was bad, and could not be sustained, because it referred to and was made under the act of 1861, when there was no such act in existence ; the same having been repealed, at the time of the finding of the indictment ; that the indictment should have been under the act of 1863 ; that the indictment is bad ; being under a special statute, it should refer directly to the act existing and in force at the time of the commission of the act.

The court declined so to hold, and the defendant's counsel excepted. The counsel for the defendant then insisted that the indictment was defective and insufficient, and that under the proof the defendant could not be convicted of any offense. His honor, the county judge, declined so to hold, and the defendant's counsel excepted ; and thereupon the defendant, to prove the issue on his behalf, called witnesses.

At the close of the testimony, the counsel for the defendant moved that the defendant be discharged, on the grounds before stated ; also because the proof showed that the offense was committed in a different town from that alleged in the indictment; and also that there was no proof showing that the defendant had any interest in the fish or seine. The court declined so to hold, and the defendant's counsel excepted.

The defendant's counsel asked the court to instruct the jury to find a verdict of not guilty, for the reasons stated in the motion for a discharge, at the close of the people's case ; which motion was denied by the court, and the defendant's counsel excepted.

Thereupon the court charged the jury, among other things, that it made no difference whether the fishing was in the town of Canandaigua, or in the town of Gorham, under the indictment ; or whether the defendant had any interest in the seine, or the fish caught ; or whether he merely assisted in

pulling in the seine, at the request of another, and that with-
out any pay, interest or reward of any kind ; that the defend-
ant would be equally guilty ; to all of which the defendant's
counsel excepted.

The defendant's counsel then requested the judge to charge
the jury, that they must find that if the defendant caught
fish, the same was done willfully, wrongfully or maliciously,
on his part, or it was no offense, under the statute.   The judge
declined so to charge, and the defendant's counsel then and
there duly excepted.

The jury convicted the prisoner ; whereupon the defend-
ant's counsel made a motion in arrest of judgment, upon the
ground made at the close of the people's evidence, for dis-
charge of the prisoner.   The motion was denied, and the
defendant's counsel excepted.   The defendant was sentenced
to pay a fine of $40. ·

*J. P. Faurot*, for the defendant.   I. The indictment was
found in May, 1865, and alleges that the defendant took fish
by means of a seine, contrary to the provisions of sections *one*
and *three* of the act passed April 12, 1861, entitled "An
act for the preservation of fish in Canandaigua lake and inlet
thereof, lying within the counties of Ontario and Yates."
The act under which this indictment was found, was repealed
in 1862.   (*Sess. Laws* 1862, *p.* 874, § 24.)   In 1863, the act
under which this indictment was found was passed, re-enact-
ing the law of 1861.   (*Laws of* 1863, *p.* 801, § 4.)

II. This indictment can not be sustained, because it is
based upon a special statute, and refers to an act passed and
existing in 1861, after that act had been repealed and did not
exist.   The defendant is convicted of violating an act of
1861, and the indictment is bad, because the court, upon the
conviction under it, can not render a proper judgment ; nor
could the defendant plead his conviction or acquittal in bar of
another prosecution for the same offense ; nor was the defend-
ant called upon to defend, except against the statute set forth

in the indictment. (*The People* v. *Taylor*, 3 *Denio*, 91. *The People* v. *Borges*, 6 *Abb. Pr.* 132. *Biggs* v. *The People*, 8 *Barb.* 547. *Barb. Crim. Law*, 375, 376.)

III. This is an offense created by statute, and was not an offense at common law; therefore, as both counts in the indictment specify sections 1 and 3 of the act of 1861, the people are bound by the averments, as there is no general conclusion against the statute. This not being an offense at common law, the indictment must conclude against the form of the statute, and if the party undertakes to recite the statute, it must be set forth correctly. (*People* v. *Cook*, 2 *Park. Crim. Law*, 12. *Barb. Crim. Law*, 332, 220. *Chit. Crim. Law*, 277.)

IV. If the act of 1862 had been repealed, it would have revived the act of 1861; but it was not repealed. It is the enacting clause that gives vitality to the law, and the law of 1863 did not revive the law of 1861, but only re-enacted the *body* of that law, so that it was made a law in 1863, anew. The definition of the word re-enacting, is the enacting or passing of a law a second time, and is not the revival of the old law. The law of 1863 took effect, by its terms, at that time. (*Sess. Laws* 1863, *p.* 783.)

V. There being no general conclusion in the indictment, against the statute, but the indictment being upon sections 1 and 3 of the act of 1861, specially, and there being no act of that year existing at the time of the finding of the indictment, it is bad, and can not be sustained. (6 *Term R.* 776.)

VI. It is submitted, that if the legislature have authority to prevent fishing by seine or net, in any of the public waters in the state of New York, it has authority to prohibit fishing, or the taking of any fish, of whatever kind, in any manner whatever; which right the citizen has by prescription. And if the legislature have authority to prohibit the taking of fish in any manner, it has authority to prevent navigation, or the use of any public water, by any of the citizens of this state, for any purpose whatever; and it is claimed, therefore,

that the law of 1863, as well as the law of 1861, (as it existed,) are unconstitutional and void.

VII. The finding of an *indictment* implies, necessarily, that the person charged is guilty of some willful wrong, or malicious act. The judge, at the sessions, refused to charge that the jury must find, that if the defendant caught fish, it was done willfully, wrongfully, or maliciously. The statute of 1861 specifies that the fishing in a certain manner shall be a misdemeanor. The very definition of misdemeanor is, that it is a crime less than a felony. (*Barb. Crim. Law,* 20. 4 *Black. Com.* 5, *note* 2.) 1. Whatever amounts to a public *wrong,* is indictable, and may be punished as a misdemeanor. (*Barb. Crim. Law,* 20.) Although the fishing with a seine was a misdemeanor, without proving the intent, yet the court, in all cases of misdemeanors or felonies, should charge the jury that they must find the act either wrongful, willful or malicious; because a party can not be found guilty of a misdemeanor unless they find a wrongful act done; hence the court erred in refusing to charge, in this case, that the jury must find that if the defendant caught fish with a seine, it was done either willfully, wrongfully, or maliciously. (*Barb. Crim. Law,* 218.) 2. The indictment itself alleges that the act was done wrongfully, willfully and maliciously, and it was necessary that it should so allege, or it would have been bad; and the jury must so find.

*Edw. Hicks,* (district attorney,) for the people. I. The indictment was entirely sufficient. It charged the misdemeanor in the language of the statute, to wit: That the defendant did "*unlawfully,*" willfully and maliciously, "*take, catch and procure from Canandaigua lake, lying within the county of Ontario,*" a number of "*fish.*" (*See Sess. Laws of* 1861, *ch.* 173.) This is all that is necessary to charge the offense. What follows is an attempt to refer to the prohibitory sections, being 1st and 3d of the act.

II. But it is unnecessary to refer to the section of the act

The People *v.* Reed.

at all. If, without this special reference, the indictment had concluded, "contrary to the statute," &c., it would have been entirely sufficient. The pleading is inartistically drawn, but nevertheless quite sufficient. If the conclusion had been omitted entirely, it would have been good. It being matter of form, is covered by the statute of jeofails. (2 *R. S. part* 4, *art.* 2, *ch.* 2, § 54.)

III. This being true, it does not matter that the reference is to the statute of 1861, instead of 1863. The statute declaring the catching of fish in Canandaigua lake a misdemeanor, was passed in 1861, repealed by section 24 of chapter 474 of the Laws of 1862. And in 1863, by section 4 of chapter 462, it was enacted as follows: "All the provisions of chapter 173 of the Laws of 1861 are hereby re-enacted, and declared to be in full force, from and after the passage of this act." (*See chap.* 474 *of the Laws of* 1862, *and* § 4, *chap.* 462, *Laws of* 1863.) Had it been necessary to refer specifically to the provisions of the law, a reference to the law of 1863 would have been unintelligible, while that to the law of 1861 brought to the notice of the defendant the whole provisions of the law under which he was indicted. It was unnecessary, as before stated, to refer to either; the statute being a public statute.

IV. There is not, and never has been, any doubt about the right of the legislature to pass laws prohibiting the taking of fish from the public waters of the state, and even in rivers not navigable. (*Hooker* v. *Cummings,* 20 *John.* 100. *The People* v. *Platt,* 17 *id.* 195.)

V. It is not material whether the proof shows the act to have been committed in the *town* of Canandaigua or Gorham, it being undisputed that it was in the county of Ontario, and therefore within the jurisdiction of the court. The allegation that it was within the town of Canandaigua, is matter of *venue* only, and is immaterial, whether proved as laid or not, if within the jurisdiction of the court. (*See Wharton's*

*Criminal Law*, §§ 280, 601, 602; *People* v, *Honeyman*, 3 *Denio*, 121.)

VI. There was no error committed by the judge, in his charge, and the sentence should be affirmed.

*By the Court*, JOHNSON, J. The objection to the indictment is of the most technical character imaginable. It is in substance, this: that the indictment recites the wrong year in which the act, under which the defendant was indicted, was passed by the legislature. The indictment alleges, or recites, that the act was passed April 12, 1861. It was, in fact, passed on that day and year, but was repealed the next year. It was re-enacted May 5, 1863, by a provision declaring that "all the provisions" of that chapter "are hereby re-enacted, and declared to be in full force from and after the passage of this act." The statute thus re-enacted, was chapter 173 of the Laws of 1861, containing six sections. It is claimed that this is a material variance, which is fatal to the indictment. But it is no variance at all, within the rule on that subject. The offense was committed after the re-enactment in 1863, and while the act was in force; and it is not pretended there is any misrecital of any of the provisions of the act. A material variance, in such a case, is where some material provision of the statute is misrecited.

It is wholly immaterial when the statute was enacted by the legislature and became a law, provided it was in force when the offense charged in the indictment was committed. It is a public statute, of the provisions of which courts will take judicial notice, and none of which need have been recited in the indictment. But the statement of the time when it was passed, was altogether surplusage, and wholly immaterial; and could by no possibility have prejudiced the defendant. Consequently, the indictment is not rendered invalid by the misstatement of the time of the enactment. (2 *R. S.* 728, § 52, *subd.* 4.)

Strictly, as a present law, the act was passed on the 5th

of May, 1863, though, from the mode of its re-enactment, it could not be described intelligibly without a reference to its first enactment in 1861, and the statutes of that year must be referred to and consulted for the purpose of ascertaining what the provisions of the act are. The real objection, if any could be taken, would be that the reference did not go far enough, and state the time of the re-enactment, also. That would have made a complete and perfect reference. But as it has no materiality whatever, the technical defect is cured by the statute.

There is no force whatever in the objection to the power of the legislature to pass a valid law to prevent taking fish at certain seasons, within the waters of this state. It is a power which the legislature has always exercised, and the right is founded in considerations of public policy.

The offense consisted in doing the acts prohibited by the statute, and it was wholly unnecessary for the jury to find that the defendant was actuated by express malice. It was enough for them to find that he was guilty of the act. There was no error, therefore, in the refusal of the judge to charge the jury as requested, on that subject.

The conviction and sentence must be affirmed.

[MONROE GENERAL TERM, March 5, 1866, *Welles, E. D. Smith* and *Johnson,* Justices.]